**COUNCIL 13, American Federation of State, County and Municipal Employees, AFL–CIO, by its Trustee ad litem, David R. Fillman; and Richard Conway; Samuel Deitch; Randy Lash, Robenna Mitchell, and Pennsylvania**

---

Social Services Union, Local 688 of the Service Employees International Union, by its Trustee ad litem, Kathy Jellison and Federation of State Cultural and Educational Professionals, AFT, Stephen Fisher, Petitioners

v.

COMMONWEALTH of Pennsylvania; The Honorable Edward G. Rendell, Governor of the Commonwealth of Pennsylvania; Naomi Wyatt, Secretary of Administration; Michael Masch, Secretary of Budget; and Robin L. Wiessmann, Treasurer of the Commonwealth of Pennsylvania, Respondents.

Commonwealth Court of Pennsylvania.

Heard June 27, 2008.

Decided July 23, 2008.

Alaine S. Williams, Philadelphia, for petitioners.

Gregory E. Dunlap, Deputy General Counsel, Harrisburg, for respondents, Rendell, Wyatt and Masch.

Leo Pandeladis, Chief Counsel, Harrisburg, for respondent, Wiessmann.

OPINION BY Judge LEAVITT.

Before this Court is a petition for review in the nature of a request for declaratory relief filed by three unions (collectively, Unions)[1] against the Commonwealth of Pennsylvania, Governor Edward G. Rendell, Secretary of Administration Naomi Wyatt, Secretary of the Budget Michael

---

1. The Unions petitioning the Court are Council 13, American Federation of State, County and Municipal Employees, AFL–CIO (AFSCME); Pennsylvania Social Services Union, Local 688 of the Service Employees International Union (PSSU); and the Federation of State Cultural and Educational Professionals, AFT, Local 2382 (FOSCEP). Petitioners also include four individually named members of the Unions: Richard Conway, Samuel Deitch, Randy Lash and Robenna Mitchell. These individuals were all notified that they would be furloughed on July 1, 2008, if there was no budget deal because they are deemed "non-critical" employees.

Masch and Treasurer Robin L. Wiessmann. The Unions represent approximately 16,000 Commonwealth employees who are not exempt from the wage and hour requirements of the federal Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201–219. These so-called "FLSA Covered Non–Critical" employees would have been furloughed on July 1, 2008, if Governor Rendell and the General Assembly had not agreed on the framework for a general appropriation act for the 2008–2009 fiscal year by June 30, 2008.[2] The Unions seek a declaration from this Court that the Governor's furlough plan is not "legally required" by Article III, Section 24 of the Pennsylvania Constitution and the FLSA, as the Governor's Office has asserted in public statements.

The Commonwealth's fiscal year begins at 12:00 a.m. on July 1 of every calendar year and ends at 11:59 p.m. on June 30 the following year. Upon expiration of every fiscal year, almost all of the line item appropriations in the general appropriation act for that year lapse, and, with limited exceptions, all of the Commonwealth agencies, boards, commissions, departments, offices and other entities of the executive, legislative and judicial branches have their funding terminate. Further, they lose the ability to draw on funds in the State Treasury by reason of Article III, Section 24 of the Pennsylvania Constitution, which states:

*No money shall be paid out of the treasury, except on appropriations made by law* and on warrant issued by the proper officers; but cash refunds of taxes, licenses, fees, and other charges paid or collected, but not legally due, may be paid, as provided by law, without appropriation from the fund into which they were paid on warrant of the proper officer.

Pa. Const. art. III, § 24 (emphasis added). In sum, if the General Assembly has not enacted a general appropriation act for the new fiscal year by 11:59 p.m. on June 30 of the expiring fiscal year, then at that moment "no money shall be paid out of the treasury" as needed to conduct most of the business of the Commonwealth.

In anticipation of a general appropriation act not being enacted by June 30, 2008, Governor Rendell devised a contingency plan intended to comply with the mandate of Article III, Section 24 while at the same time protecting the basic health, safety and welfare of the public until a budget was in place. The plan assumed that many Commonwealth employees are not exempt from the wage and hour provisions of the FLSA and must be paid on time if they were required to work. Section 6 of the FLSA, 29 U.S.C. § 206.[3] The Governor's contingency plan was described in an Interagency Agreement between the Governor and the State Treasurer finalized on May 28, 2008, which contemplated that

(1) employees covered by the FLSA whose duties are not necessary to insure the health, safety and welfare of the citizens, cannot be permitted to perform

---

2. The Court recognizes that the present matter is technically moot since a budget impasse for the new fiscal year has been avoided. Nevertheless, because the issue presented by the Unions is capable of repetition, the Court declines to dismiss the instant action for mootness.

3. Section 6 of the FLSA states, in relevant part, that "[e]very employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce" a minimum wage prescribed by law. 29 U.S.C. § 206(a). Although the FLSA is silent on the establishment of pay periods, it has been construed to require regular pay periods, as explained below.

their duties since the Commonwealth has no authority to make payments to those employees; (2) *employees whose duties are necessary to insure the health, safety and welfare of the citizens must continue to perform their duties and, notwithstanding the Constitutional prohibition against payments, those employees who are covered by the FLSA must be paid in a timely manner;* (3) employees not covered by the FLSA may continue to perform their duties and may be paid in arrears when an Operating Budget is enacted; and (4) employees paid from sources other than an Operating Budget may continue to perform their duties and may be paid in a timely manner.

Petition for Review, Exhibit D, Interagency Agreement at 2–3 (emphasis added).

In order to implement the Interagency Agreement, Secretary of Administration Naomi Wyatt sent a memorandum to all agency heads on June 6, 2008, directing them to categorize all agency employees by whether they are covered by the FLSA and whether they are critical to the health, safety and welfare of the public. Specifically, Secretary Wyatt directed that employees be placed into one of the following categories:

**FLSA Covered Critical:** Positions who perform functions essential to protect the health, safety and welfare of the public. Examples include State Police Officers, Corrections Officers, nurses in veterans' homes and state hospitals, and emergency management personnel. *These employees will work and will be paid on time.*

**FLSA Covered Non–Critical:** Position performing important work, but which are not critical to the health, safety and welfare of citizens. Examples include clerks who process drivers' licenses and motor vehicle renewals, maintenance staff at state parks who maintain, repair and renovate buildings, financial examiners who review records for compliance with regulations, Civil Service staff who conduct civil service testing. *These employees will be furloughed.*

**FLSA Exempt:** These are employees who are not covered by the wage and hour provisions of the federal Fair Labor Standards Act. Generally, these are executives, employees in policy positions, attorneys and employees in similar positions. *These employees will work but will not be paid until after a budget has been passed.*

**Special Funded:** Positions not affected by a budget impasse because they are paid from special funds that are permanently or continually appropriated via their enabling acts and that do not fall under the General Appropriations Act.... *These employees will work and will be paid on time.*

Memorandum from Naomi Wyatt, Secretary of Administration, June 6, 2008, at 1–2; Exhibit D to Petition for Review (emphasis original).

Secretary Wyatt gave instructions on what would happen if a budget were not enacted by June 30, 2008. First, Commonwealth employees who continued to work after June 30 would be paid on a biweekly schedule if they were (1) FLSA Covered Critical employees or (2) Special Funded employees. Second, all FLSA Covered Non–Critical employees were to be furloughed effective July 1, 2008. In accordance with Secretary Wyatt's directive, approximately 25,000 FLSA Covered Non–Critical employees were advised of their possible furlough. The Unions in the present action represent approximately 16,000 of these non-critical employees.

Presently, the Unions explain that they are not challenging the Governor's authori-

ty to furlough state employees or to classify them as critical or non-critical. Rather, the Unions take issue with the Governor's repeated statements that he is *required* by law to furlough FLSA Covered Non–Critical employees if a budget is not in place by the beginning of a new fiscal year. The Unions' underlying premise is that the FLSA supersedes Article III, Section 24 of the Pennsylvania Constitution and, therefore, there is no impediment to the Governor continuing to compensate all FLSA-covered employees who work during a budget impasse. The Unions have filed an Application for Summary Relief pursuant to PA. R.A.P. 1532(b) to have this Court declare their premise to be the law.[4]

The Governor and the Treasurer counter that the Unions' claim for declaratory relief is not justiciable and that the Court should dismiss their petition for review with prejudice. The Governor and the Treasurer have also filed a cross-application for summary relief asking the Court to declare that continuing to pay all Commonwealth employees without a budget in place is not authorized by any state law and is "an erosion of the express language of Article III, Section 24 of the Pennsylvania Constitution." Cross–Application for Summary Relief at 16. The Governor further asks the Court to declare that, in accordance with his duty as chief executive to "take care that the laws be faithfully executed," PA. CONST. art. IV, § 2, the Governor has the authority to furlough temporarily employees he determines not to be critical to maintaining the basic health, safety and welfare of the public.[5] The Governor views budget impasse furloughs as the best way to minimize the violation of Article III, Section 24 of the Pennsylvania Constitution. The Unions counter that it must be presumed that all legislative enactments are entitled to equal enforcement, and the General Assembly has never directed the Governor to dis-

4. Rule 1532(b) states: "At any time after the filing of a petition for review in an appellate or original jurisdiction matter the court may on application enter judgment if the right of the applicant thereto is clear." PA. R.A.P. 1532(b). The official note to Rule 1532(b) explains that it "authorizes immediate disposition of a petition for review, similar to the type of relief envisioned by the Pennsylvania Rules of Civil Procedure regarding judgment on the pleadings and peremptory and summary judgment." PA. R.A.P. 1532, Note.

5. Commonwealth Respondents request

> that this Court find that when appropriations have not been enacted into law as required by Article III, § 24, of the Pennsylvania Constitution authorizing the payment of money from the State Treasury to pay salaries, wages and other expenses of the work of the Commonwealth government, the Governor has the authority, as the official constitutionally vested with the "supreme executive power" of the Commonwealth with the principal constitutional duty to "take care that the laws are faithfully executed," *see* Pa. Const. art II, § 2, to

> temporarily furlough employees he determines are [not] critical to maintaining the basic health, safety and welfare of the public where the Commonwealth otherwise would be legally liable under the FLSA and [*Council 13, American Federation of State, County and Municipal Employees, AFL–CIO v. Casey,* 156 Pa.Cmwlth. 92, 626 A.2d 683 (1993)] to make payments for salaries, wages and other expenses for which there are no appropriations.

Cross Motion for Summary Relief, ¶ 46. They also request the Court

> [to] declare that there is no state law that obligates or allows the Governor to permit Commonwealth employees to report for work to earn compensation, which under the federal FLSA and *Casey* would result in the Commonwealth's obligation to pay fully and on time, notwithstanding the fact that there are no appropriations enacted by law that would constitutionally authorize the payment of such compensation; and that to do so would be an erosion of the express language of Article III, Section 24 of the Pennsylvania Constitution.

Cross Motion for Summary Relief, ¶ 47.

pense with enforcement of some of its laws during a budget impasse by, for example, closing State Parks for lack of personnel.

The only Pennsylvania decision to discuss the interplay between the FLSA and Article III, Section 24 of the Pennsylvania Constitution is *Council 13, American Federation of State, County and Municipal Employees, AFL–CIO v. Casey,* 156 Pa. Cmwlth. 92, 626 A.2d 683 (1993). In this single-judge opinion by President Judge Craig, this Court held that the FLSA applied to State employees; that the FLSA required that State employees be paid biweekly; and that the funds in the treasury could be used to compensate State employees without the need for appropriation. Specifically, the Court held:

> [W]hen state employees are required to work at the performance of their job duties, the [FLSA] mandates that the Commonwealth ... *shall pay to such employees ... their regular salaries and wages from monies actually in the treasury,* even though the pertinent fiscal year appropriation line item has been exhausted, because the federal [FLSA], 29 U.S.C. § 206 governs, prevailing by virtue of the Supremacy Clause of the United States Constitution over Pa. Const. art. III, § 24 that requires Pennsylvania legislative appropriation authorization for payments by the Commonwealth.

*Id.* at 687 (emphasis added). The parties disagree on the application of *Casey,* but they seem to believe that its precepts should be followed here.

In finding preemption, President Judge Craig relied upon *Garcia v. San Antonio Metropolitan Transit Authority,* 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985). This warrants a brief review of the

U.S. Supreme Court's jurisprudence in the areas of the FLSA and federalism.

In *National League of Cities v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), the U.S. Supreme Court held that the FLSA's 1974 amendments, extending the Act's minimum wage and maximum hour provisions to States and their political subdivisions, were unconstitutional.[6] The parties to the litigation accepted the premise that extending the FLSA requirements to States was a proper exercise of Congress' power to regulate commerce "among the several States." U.S. CONST. art. I, § 8, cl. 3. However, the State of California argued that Congress' commerce power is not absolute but, rather, limited by the Constitution's amendments. *See, e.g., United States v. Jackson,* 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968) (Congressional enactment fully within grant of authority to regulate commerce was nonetheless invalid because it offended the right to a jury trial set forth in the Sixth Amendment). California argued that the Tenth Amendment, which guarantees state sovereignty, barred Congress from making the FLSA applicable to the States in their capacity as employers. The Supreme Court agreed, holding that the Tenth Amendment limited Congress' exercise of the commerce power with respect to States.

The Supreme Court explained that to apply the FLSA to States

> will ... significantly alter or displace States' abilities to structure employer-employee relationships *in such areas as fire prevention, police protection, sanitation, public health, and parks and recreation....* Indeed, it is functions such as these which governments are created

---

**6.** Congress extended the wage and hour provisions of the FLSA to most state and local employees in 1974. *See* Fair Labor Standards Amendments of 1974, Pub.L. 93–259, §§ 6(a)(1), (2), 88 Stat. 58–59.

to provide, services such as these which the States have traditionally afforded their citizens. If Congress may withdraw from the States the authority to make these fundamental employment decisions upon which their systems for performance of these functions must rest, we think there would be little left of the States' "separate and independent existence."

*Id.* at 851, 96 S.Ct. 2465 (citation omitted) (emphasis added). Accordingly, the Supreme Court held that the States' ability to structure the employer-employee relationship in its performance of "an integral portion of these governmental services which the States and their political subdivisions have traditionally afforded their citizens" was beyond Congressional interference by exercise of the commerce power. *Id.* at 855, 96 S.Ct. 2465. Notably, the traditional State services identified in *National League of Cities* are very similar to those services performed by the "FLSA Covered Critical" employees, *i.e.*, the services of Pennsylvania's state police, corrections officers, emergency management personnel, and nurses in veterans' homes and state hospitals.

In *Garcia*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016, a 5 to 4 decision issued nine years after *National League of Cities*, the U.S. Supreme Court reversed itself. Finding the "function" standard announced in *National League of Cities* to be unworkable, the Supreme Court held that the City of San Antonio's transit authority was not immune from the minimum wage and overtime requirements of the FLSA. It did so, as noted in the leading dissent of Justice Powell, with

> only a single passing reference to the Tenth Amendment. Nor is so much as a dictum of any court cited in support of the view that the role of the States in the federal system may depend upon the

grace of elected federal officials, rather than on the Constitution as interpreted by this Court.

*Id.* at 560–561, 105 S.Ct. 1005. The four dissenters concluded that the *Garcia* majority had rejected, improperly, "the basic precepts of our federal system." *Id.* at 579, 105 S.Ct. 1005. In his dissent, Justice Rehnquist observed that the "principle [of federalism] ... will, I am confident, in time again command the support of a majority of this Court." *Id.* at 580, 105 S.Ct. 1005.

Since *Garcia*, the Supreme Court has returned to the principles of *National League of Cities*. The Court has repeatedly abrogated attempts by Congress to use the commerce power in a way that interferes with State sovereignty. *See, e.g., Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (holding that states are immune from private suits in federal court and that Congress lacks the authority to abrogate that immunity); *Printz v. United States*, 521 U.S. 898, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997) (holding that the Supremacy Clause cannot be invoked where congressional act violates a State's sovereignty and that the Tenth Amendment is not the exclusive textual source for principles of federalism); *Alden v. Maine*, 527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999) (provisions of FLSA purporting to authorize private actions against states in state courts without their consent held to be an unconstitutional abrogation of state sovereign immunity); and *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board*, 527 U.S. 666, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999) (holding that State of Florida's sovereign immunity not validly abrogated by Congress' regulation of interstate commerce in Trademark Remedy Clarification Act).

Time has vindicated Justice Rehnquist's confidence that respect for State sovereignty, inherent to our system of federalism, would be restored. At its essence, federalism means that "the Constitution has never been understood to confer upon Congress the ability to require the States to govern according to Congress' instructions." *New York v. United States,* 505 U.S. 144, 161, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992) (cited repeatedly with approval in *Printz,* 521 U.S. 898, 117 S.Ct. 2365, 138 L.Ed.2d 914). In short, the core assumption in *Casey* that the provisions of the FLSA are applicable to the States is not a secure assumption but, rather, a doubtful one given the way Supreme Court jurisprudence has developed since *Casey.*

In any case, applying the FLSA to Pennsylvania State employees does not lead, inexorably, to the conclusion that Congress intended the FLSA to preempt Pennsylvania's constitutional requirement that only funds in the treasury that have been appropriated by the General Assembly may be spent. The language of the FLSA does not support such a conclusion.

First, the FLSA establishes minimum wage and overtime standards; it says nothing about the length or frequency of a pay period. The requirement that the FLSA requires timely payment of wages is one of judicial interpretation. *See, e.g., Biggs v. Wilson,* 1 F.3d 1537, 1538 (9th Cir.1993) ("under the FLSA wages are 'unpaid' unless they are paid on the employees' regular payday."); *Calderon v. Witvoet,* 999 F.2d 1101, 1107 (7th Cir.1993) ("the FLSA requires the employer to pay *on time.*") (emphasis original); *Rogers v. City of Troy, New York,* 148 F.3d 52, 57 (2d Cir.1998) ("First, it is clear that the FLSA requires wages to be paid in a timely fashion."); *Herman v. Fabri–Centers of America, Inc.,* 308 F.3d 580, 591 (6th Cir.2002) (citing *Biggs* with approval for the proposition that "[t]he obligation [to pay the minimum wage] kicks in once an employee has done covered work in any workweek.").[7] These interpretations are instructive but not binding on state courts; only interpretations of the FLSA by the United States Supreme Court are binding on state courts. *See A.L. Lockhart v. Fretwell,* 506 U.S. 364, 376, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993) (noting that a state court interpretation of a federal law need not give way to a lower federal court's interpretation).

Nevertheless, assuming that the FLSA requires the payment of wages on time, *i.e.,* biweekly in the case of Pennsylvania employees, it does not follow that Article

---

**7.** The cases cited above all cite to the U.S. Supreme Court's dicta in *Brooklyn Savings Bank v. O'Neil,* 324 U.S. 697, 65 S.Ct. 895, 89 L.Ed. 1296 (1945), for the proposition that the FLSA requires timely payment of wages. In *Brooklyn Savings Bank,* the Court considered whether an employee covered by the FLSA could waive or release his right to liquidated damages under the penalty provisions of Section 16(b) of the Act, 29 U.S.C. § 216(b). In examining the mandatory nature of liquidated damages under the FLSA, the Court noted that the Act

> constitutes a Congressional recognition that failure to pay the statutory minimum *on time* may be so detrimental to maintenance of the minimum standard of living "necessary for health, efficiency, and general well-being of workers" and to the free flow of commerce, that double payment must be made *in the event of delay* in order to insure restoration of the worker to that minimum standard of well-being.

*Id.* at 707, 65 S.Ct. 895 (emphasis added) (footnotes omitted). *Brooklyn Savings Bank* was decided before Congress amended the FLSA in 1947 to allow judges to exercise discretion in awarding liquidated damages. Although not the holding, *Brooklyn Savings Bank* recognized that employees have a remedy under the FLSA, *i.e.,* a lawsuit for double payment of wages, where wages are not paid on time.

III, Section 24 of the Constitution has been nullified with respect to FLSA-covered employees.[8] First, the FLSA does not contain any instructions to employers that lack the funds to make payroll on time. It simply increases their liability by giving employees the right to seek liquidated damages. Section 216(b) of the FLSA, 29 U.S.C. § 216(b).[9] The liquidated damages remedy is the only one authorized by Congress in the FLSA, and it is complete.[10] Second, the FLSA does not address the crisis that occurs when a State is deadlocked by a budget impasse. Accordingly, there is no basis for inferring

that Congress intended to countenance, let alone require, a raid upon a State treasury for monies that do not belong to any agency or public official until the day they are actually appropriated.

In holding the FLSA to preempt Article III, Section 24 of the Pennsylvania Constitution, the *Casey* court also preempted a Pennsylvania criminal statute. Section 54 of the Act of April 6, 1870, P.L. 17, imposes criminal penalties upon the State Treasurer for violations of Article III, Section 24 of the Constitution: "[I]f the state treasurer shall pay ... a greater sum than is

8. It is not the FLSA but, rather, the Executive Board that established the biweekly pay schedule for State employees. Section 709 of The Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. § 249(a) ("the Executive Board shall have the power ... [t]o standardize the ... salaries, and wages, of persons employed by the administrative departments, boards, and commissions, except the Office of Attorney General, the Department of the Auditor General and the Treasury Department."). There is something quite illogical and circular about having a State administrative agency's mandate become a federally-enforced right that has such force that it rolls over a provision in that State's constitution.

The Executive Board could provide an exception to the biweekly pay schedule for the situation where the annual general appropriation act is not enacted by June 30 and in that circumstance make the pay period quarterly.

9. It states, in relevant part, as follows:

Any employer who violates the provisions of section 206 ... of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, *as the case may be, and in an additional equal amount as liquidated damages.* ... An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.... The right provided by

this subsection to bring an action by or on behalf of any employee, and the right of any employee to become a party plaintiff to any such action, shall terminate upon the filing of a complaint by the Secretary of Labor in an action under section 217 of this title in which (1) restraint is sought of any further delay in the payment of unpaid minimum wages, or the amount of unpaid overtime compensation, as the case may be, owing to such employee under section 206 ... of this title by an employer liable therefor under the provisions of this subsection or (2) legal or equitable relief is sought as a result of alleged violations of [the anti-retaliation provisions of] section 215(a)(3) of this title. 29 U.S.C. § 216(b) (emphasis added). Since Pennsylvania has not abrogated its immunity for suits arising from violations of the FLSA, it is doubtful that Pennsylvania State employees can employ this remedy on their own initiative. Whether the U.S. Secretary of Labor would elect to bring an action on their behalf is another question.

10. If State employees do not have a private right of action against their employer to enforce the terms of the FLSA as a matter of State sovereignty under the U.S. Constitution, it is a stretch to hold that one of the foundational principles in that State's constitution, *i.e.*, the need to appropriate funds before spending them, falls by reason of the FLSA. In any case, there is no basis for a State court to add to the remedies provided by Congress in the FLSA when one remedy, the private right of action, is held not to be available to State employees.

named ... for each appropriation ...,
[she] shall be deemed guilty of a misde-
meanor...'." 72 P.S. § 3422. If States
may violate their own criminal statutes
under authority of the FLSA, then private
employers may also violate state criminal
statutes if necessary to make payroll on
time. Such an extreme interpretation of
the FLSA could not have been one intend-
ed by Congress.

■ This Court declines to follow the
pre-emption analysis of *Casey*, which is not
binding because it is a single-judge opin-
ion. This Court concludes that there exists
no conflict between the FLSA and Article
III, Section 24; the two provisions address
different concerns.[11] Congress did not in-
tend the FLSA to authorize public employ-
ers to raid their treasuries illegally any
more than it intended that private employ-
ers could rob banks, whenever necessary
to make payroll on time.[12] In sum, the
Court holds that the FLSA does not
preempt Article III, Section 24 of the
Pennsylvania Constitution.

■ The Court turns, then, to the
Unions' request for declaratory relief.[13]
The purpose of the Declaratory Judgments
Act, 42 Pa.C.S. §§ 7531–7541, is to "settle
and to afford relief from uncertainty and
insecurity with respect to rights, status,
and other legal relations, and is to be
liberally construed and administered." 42
Pa.C.S. § 7541(a). However, an action
brought under the Act "must allege an
interest by the party seeking relief which
is direct, substantial and present, ... and

must demonstrate the existence of an actu-
al controversy related to the invasion or
threatened invasion of one's legal rights."
*Bowen v. Mount Joy Township*, 165 Pa.
Cmwlth. 101, 644 A.2d 818, 821 (1994).
The Pennsylvania Supreme Court has fur-
ther explained that

> [a] declaratory judgment must not be
> employed to determine rights in antici-
> pation of events which may never occur
> or for consideration of moot cases or *as
> a medium for the rendition of an advi-
> sory opinion* which may prove to be
> purely academic.

*Gulnac*, 526 Pa. at 488, 587 A.2d at 701
(emphasis added).

The Unions do not seek relief from the
budget impasse furloughs themselves, con-
ceding that the Governor has the authority
to order them. Rather, they ask the
Court to declare that the Governor may
not justify these furloughs by stating that
he is "required" to do so by the Pennsylva-
nia Constitution.

The Governor and the Treasurer seek
dismissal of the Unions' petition for review
for the stated reason that their claims are
non-justiciable and violate the Separation
of Powers doctrine. They argue that when
faced with a budget crisis that leaves criti-
cal State operations, such as the staffing of
prisons and maintaining police protection
without funding, it is the Governor who
must choose the appropriate response.
This is true. The Governor must decide
whether to furlough employees after June
30 where there is a lack of funds; to

---

**11.** On the other hand, were a State to enact
minimum wage and overtime standards for
employers in that State which conflicted with
the standards of the FLSA, to the detriment of
the employee, the FLSA would prevail by
reason of the Supremacy Clause.

**12.** Indeed, if public employers can raid their
State's treasury illegally, then so can private
employers. Until public funds are appropri-

ated, they belong to no person, public or
private.

**13.** Granting or denying a petition for a de-
claratory judgment is a matter lying within
the sound discretion of a court of original
jurisdiction. *Gulnac by Gulnac v. South But-
ler County School District*, 526 Pa. 483, 487,
587 A.2d 699, 701 (1991).

compromise with the General Assembly on the annual budget; or to inform employees that they are expected to work through the budget impasse and will not be compensated until the budget is enacted.[14] It is not for the Court to chart the Governor's course between these alternatives, which are inherently political and, as such, beyond a court's power to direct. *See Sweeney v. Tucker,* 473 Pa. 493, 509, 375 A.2d 698, 705 (1977) ("a political question exists when 'the Constitution has committed to another agency of government the autonomous determination of the issue raised.' ") (quoting Herbert Wechsler, *Toward Neutral Principles of Constitutional Law,* 73 HARV. L.REV. 1, 7–8 (1959)).[15]

■ However, the Unions respond that they do not seek to direct the Governor's choice. They seek only a declaration that he has more choices than he is willing to acknowledge, *i.e.,* that he can use funds in the treasury, which are not yet appropriated, to pay all FLSA-covered employees. How the Unions will use the declaration of rights they seek, whether in future collective bargaining sessions or in a complaint before the State Civil Service Commission,[16] is of no moment. They contend that they are entitled to have their legal question settled "whether or not further relief is or could be claimed." 42 Pa.C.S. § 7532.

The Court agrees that the Unions' request for relief does not offend Separation of Powers and does not require the resolution of a non-justiciable question. This is because the Unions seek a declaration of the law, not a directive on which political choices should be made by the Governor. The Court denies the request of the Governor and the Treasurer to dismiss the Union's petition for review.

The Court turns, then, to the respective applications for summary relief filed by the Unions and by the Governor. Because the Court holds that the FLSA does not preempt Article III, Section 24 of the Pennsylvania Constitution, it must deny the Unions' application for summary relief and part of the Governor's cross-application for summary relief.

14. Should the Governor choose not to furlough any State employees, it is for those employees to decide whether to continue to work given the uncertainty of the date of their next check and, if they do work, to decide whether to elicit the assistance of the U.S. Secretary of Labor in seeking liquidated damages under the FLSA should their wages not be paid "on time."

15. In *Sweeney,* the Pennsylvania Supreme Court adopted the oft-quoted standards adopted by the U.S. Supreme Court in *Baker v. Carr,* 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), for evaluating whether a case involves a political question:

Prominent on the surface of any case held to involve a political question is found a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Sweeney,* 473 Pa. at 510, 375 A.2d at 706 (quoting *Baker,* 369 U.S. at 217, 82 S.Ct. 691).

16. A furlough of a state civil servant may be validly implemented only on the basis of a lack of work or a lack of funds. *Dougherty v. Department of Health,* 113 Pa.Cmwlth. 620, 538 A.2d 91, 93 (1988) (citing Section 3(s) of the Civil Service Act, Act of August 5, 1941, P.L. 752, *as amended,* 71 P.S. § 741.3(s), which expressly defines a "furlough" as "the termination of employment because of lack of funds or of work.").

718

■ The Court denies the Unions' application because it would violate Article III, Section 24 of the Pennsylvania Constitution. The FLSA does not authorize an illegal raid on a State's treasury to make payroll. The Unions' remedy for a violation of the FLSA, if any, is the one created by Congress, *i.e.,* a claim for liquidated damages, and this is a complete remedy. Accordingly, the Unions' request for a judgment that the Governor may draw funds from the State treasury to compensate all FLSA-covered State employees without the need for an appropriation from the General Assembly must be denied.

■ With respect to the Governor's cross-application for summary relief, to the extent the Governor seeks the Court's approval of his contingency plan in the form of a declaration that he is authorized to draw on funds in the treasury without an appropriation so long as it is only for a "minimal violation," of Article III, Section 24, *i.e.,* to compensate FLSA Covered Critical employees, the request must be denied. The Governor is obligated to faithfully execute the laws of the Commonwealth, including the law embodied in Article III, Section 24. Simply, an order that sanctions a constitutional violation is beyond the power of this Court to grant. On the other hand, the Court grants the Governor's cross-application for a declaration that he is authorized to furlough employees for lack of funds because the Unions do not question that authority and it is, in fact, a correct statement of the law.

For these reasons, the Court denies the Unions' application for summary relief, and it denies in part and grants in part the Governor's cross-application for summary relief.

### ORDER

AND NOW, this 23rd day of July, 2008, Respondents' request to dismiss with prejudice Petitioners' Petition for Review in the Nature of a Request for Declaratory Relief is DENIED. Petitioners' Application for Summary Relief is DENIED, and Respondents' Cross-Application for Summary Relief is GRANTED IN PART and DENIED IN PART. The Court enters a declaratory judgment that Article III, Section 24 of the Pennsylvania Constitution is not preempted by the federal Fair Labor Standards Act, 29 U.S.C. §§ 201–219; therefore, when state employees are required to work at the performance of their job duties after the pertinent fiscal year appropriation line item for their salaries and wages has been exhausted, the Governor is not required to pay, and is in fact prohibited from paying, those employees their regular salaries and wages from monies actually in the treasury but not yet appropriated by the General Assembly.