QUESTIONS PRESENTED AND ANALYSIS Question 1: In order to meet personal services budget cuts, may the Governor order mandatory unpaid furloughs for State employees in executive agencies?
Answer 1: The Governor has the executive power to allocate staff and resources, which includes the ability to furlough executive agency employees during a fiscal crisis.
 Analysis
The General Appropriations Bill, or Long Bill, provides for the appropriation of funds for the expenses of the executive, legislative, and judicial departments of the state.[1] The General Assembly is required to create a balanced budget; "No appropriation shall be made, nor any expenditure authorized by the general assembly, whereby the expenditure of the state, during any fiscal year, shall exceed *Page 2 
the total tax then provided for by law. . . ."[2] In the Fiscal 2009/2010 Long Bill (Senate Bill 09-259), the General Assembly cut all personal services lines with twenty or more full-time equivalent employees ("FTEs") by 1.8%. Personal services lines are specific line items in the Long Bill that are used to pay the salaries of State employees.
The Governor requested a formal opinion regarding the scope of his authority to order mandatory furloughs of certain State employees to meet a portion of the personal services cut.[3] Although the Governor's authority to order closure of executive agencies if he believes there are insufficient revenues for expenditure is clear in statute, [4] the authority to order furloughs to meet the decreased budget stems from his inherent and explicit supreme executive power as established by the Colorado Constitution.
A. The Governor has inherent authority to manage the expenses andexpenditures of executive agencies.
The Governor is vested with the supreme executive power of the state.[5] The legislative power of the state is vested in the General Assembly and the judicial power in the Supreme Court and lesser courts.[6] This separation of powers is intended as a check upon the arbitrary exercise of power for the protection of society and security of private rights and individual interests.[7] However, "in the exercise of political and governmental powers the governor is independent, or at most, is answerable only to the high court of impeachment, or, as in the case of other elective officers, to the people."[8]
The General Assembly holds plenary power to appropriate State funds, subject only to constitutional limitations.[9] Once the General Assembly appropriates the funds, the Governor takes over to "administer the appropriation to accomplish its purpose."[10] At this point, the executive branch has the authority and obligation *Page 3 
to administer those funds.[11] The Governor has the authority and duty to use the funds to run state government.[12] The Constitution invests the Governor with discretion to take acts to defray the costs of government as needed.[13] The administration of funds includes the ability to allocate staff and resources to operate state government.[14]
In Colorado General Assembly v. Owens, [15] the Supreme Court examined the relationship between the General Assembly's authority to appropriate and the Governor's authority to administer funds. The Court made clear that the Governor has the "executive authority to allocate staff and resources, make contracts, enter into agreements, or limit the general administration of the federal funds it receives."[16]
The Governor's authority to allocate staff and resources includes the authority to order executive agencies to manage the 1.8% personal services cut by furloughing employees. Furloughs are one of the tools generally available to executives with insufficient funds to meet planned payroll. Like any other executive, the Governor has the inherent authority to use this tool to match the payroll of the departments he manages with the funds available to him.
The Governor is tasked with keeping State government running within his proposed budget that is reviewed and modified by the General Assembly.[17] By ordering his executive directors to direct mandatory furloughs, the Governor is acting within his executive power.[18] This is consistent with the legislature's acknowledgement that the Governor, within his executive authority, can and should *Page 4 
restrict the number of employees to the minimum necessary for efficient operation of the State.[19]
B. The Governor's authority to order furloughs is not dependent onstatute.
The Governor suggests in his request that the authority to order mandatory furloughs resides in part in § 24-2-102(4), C.R.S. Under this statute, the Governor, upon determining that there are insufficient revenues to carry on functions of State government, may order a suspension or discontinuance of a given function.[20] The Governor's opinion request, however, was based on passage of the "Long Bill" with the 1.8% decrease in personnel expenditures and prior to June 2009 reports that revenues dropped even lower than projected in the FY 2009/2010 budget. So, § 24-2-102(4) does not apply to the situation addressed in this formal opinion because the Governor is attempting to manage the executive departments he controls based on the budget passed by the General Assembly, not based on the subsequently-announced revenue deficit. If the Governor determines that expected revenues will not meet planned expenditures in the FY 2009/2010 budget, then § 24-2-102(4) may be implicated. Until he makes such a finding, however, § 24-2-102(4) has no impact on my analysis.
Similarly, § 24-50-109.5, C.R.S., provides that if the General Assembly declares a fiscal emergency, the Governor must act to limit personnel expenditures and identifies furloughs as a permissible action.[21] During budget discussions in this year's legislative session, however, the General Assembly declined to issue a joint resolution declaring a fiscal emergency under § 24-50-109.5, C.R.S. Accordingly, this section also is not relevant to my conclusion.
 * * * Questions 2 3: In order to meet the personal services budget cuts, may the Governor order mandatory furloughs in a particular department or departments, but exclude otherwise similarly-situated positions in other departments from these furloughs? May the Governor exempt from mandatory furloughs State positions with particular duties or positions in particular agencies or divisions?
Answer: Yes. The Governor can exempt or exclude executive agencies or specific positions from mandatory furloughs under his supreme executive authority. *Page 5 
 Analysis
As stated previously, the Governor has the authority and duty to administer the funds appropriated by the General Assembly to run state government.[22] For personnel, the General Assembly must allocate "adequate appropriations . . . to carry out the purposes of [Article XII, §§ 13 and 14 of the Colorado Constitution]."[23] The General Assembly has the Constitutional responsibility to determine the "amount of revenue to be expended in carrying out the public policies of the state."[24] Once the General Assembly appropriates the funds, the Governor takes over to "administer the appropriation to accomplish its purpose. . . ."[25] The administration of funds includes the ability to allocate staff and resources to operate state government subject to limitations imposed by the legislature.[26]
The Civil Service Amendments to the Colorado Constitution neither restrict nor restrain the Governor from identifying departments or positions that are exempt from a mandatory furlough order. The Colorado Constitution requires that classified employees "hold their respective positions during efficient service or until reaching retirement age, as provided by law. They shall be graded and compensated according to standards of efficient service which shall be the same for all persons having like duties."[27] This provision requires equal pay for equal work, but does not restrict the Governor's authority or ability to exempt departments or positions from a mandatory furlough.
The equal pay for equal work clause was interpreted by the Supreme Court to "prohibit . . . preferential compensation treatment for persons equally qualified who perform substantially similar services."[28]
Consequently, the State Personnel Director creates job classifications with defined duties and responsibilities.[29] The Director then creates pay plans and ranges for these classifications.[30] This creation of job classifications and corresponding pay plans satisfies the constitutional requirement of equal pay for equal work.[31] For example, the Constitution does not require that the Governor treat an Administrative Assistant III at the Department of Public Safety the same as an Administrative Assistant III at the Department of Agriculture. *Page 6 
The Governor may determine that divisions, programs, positions, or entire departments require continuing operations and that employees therein are exempt from mandatory furloughs. The Colorado Constitution requires equal pay for equal work — that State employees with like duties be graded and compensated according to the same standards; it does not require that every position within a classification or an executive department be treated identically.[32] Employees who are furloughed receive less pay, but they also work less, in keeping with the equal pay for equal work requirement.
Of course, the Governor's authority to order furloughs is not without limit. For example, the Governor could not order mandatory furloughs for all workers over the age of 40 or just for female workers, as either action would violate the Colorado Anti-Discrimination Act.[33] None of these limits is implicated in the questions presented here, however.
 CONCLUSION
The Governor has the authority to order mandatory furloughs in order to meet the personal services budget cuts. The Colorado Constitution vests the supreme executive authority in the Governor and this includes the power to mandate furloughs. Further, the Governor has the authority to exclude departments, divisions, programs, and positions from any order of mandatory furloughs.
Issued this 16th day of July, 2009.
[1] Colo. Const. art. V, § 32.
[2] Colo. Const. art. X, § 16.
[3] This opinion is limited to consideration of the Governor's authority to order furloughs for the executive agencies that are part of his office or are headed by Executive Directors appointed by him. The question of whether the Governor has authority to order furloughs for institutions of Higher Education, the Judiciary, the Legislature, the Department of Law, the Department of State, and the Department of Treasury is beyond the scope of this memo.
[4] § 24-2-102(4), C.R.S.
[5] Colo. Const. art. IV, § 2.
[6] Colo. Const. art. V, § 1(1), art. VI, § 1.
[7] Greenwood Cemetery Land Co.v. Routt, 28 P. 1125, 1128 (Colo. 1892); see also Colo. Const. art. III.
[8] Greenwood Cemetery, 28 P. at 1126 (citation omitted).
[9] MacManus v. Love, 499 P.2d 609, 610 (Colo. 1972).
[10] Anderson v. Lamm, 579 P.2d 620, 623 (Colo. 1978). (internal quotations and citations omitted); see also MacManus, 499 P.2d. at 611 (striking an attempt by the General Assembly to limit the Governor's authority to utilize federal funds without an appropriation as an "infringement upon the executive function of administration").
[11] In re Interrogatories Submitted by General Assembly on HouseBill 04-1098, 88 P.3d 1196, 1200 (Colo. 2004).
[12] Anderson, 579 P.2d at 623.
[13] In re Appropriations by the General Assembly, 22 P. 464, 468
(Colo. 1889).
[14] Colorado General Assembly v. Owens, 136 P.3d 262, 268 (Colo. 2006).
[15] Id.
[16] Id.
[17] § 24-37-301, C.R.S.
[18] Courts in other states have affirmed the governor's power to direct furloughs. For example, in interpreting the Pennsylvania Constitution — which contains language identical to Colorado's with respect to supreme executive power (Pa. Const. art. III, § 24) — the Pennsylvania Commonwealth Court, in dicta, affirmed the governor's authority to order mandatory furloughs. See Council 13 v.Commonwealth, 954 A.2d 706, 716 (Pa.Commw.Ct. 2008) (on appeal to the Pa. Supreme Court). Similarly, a Superior Court Judge in California affirmed the governor's authority to order budget required furloughs.Prof's Eng'rs in Cal. Gov't v. Schwarzenegger, Cal. Super. Ct. Case No. 2008-80000126 (Jan. 30, 2009) (unpublished decision) (relying on the Governor's statutory authority to control work weeks and salaries).
[19] § 24-2-106, C.R.S.
[20] Bardsley v. Dep't of Pub. Safety, 870 P.2d 641, 646-47
(Colo.App. 1994).
[21] § 24-50-109.5(2), C.R.S.
[22] Anderson, 579 P.2d at 623.
[23] Colo. Const. art. XII, § 14(5).
[24] Dempsey v. Romer, 825 P.2d 44, 56 (Colo. 1992).
[25] Anderson, 579 P.2d at 623 (internal quotations and citations omitted).
[26] General Assembly, 136 P.3d at 268.
[27] Colo. Const. art. XII, § 13(8).
[28] Dempsey, 825 P.2d at 51.
[29] Id at 49; § 24-50-104(6)(b)(I), C.R.S.
[30] § 24-50-104(5)(a), C.R.S.
[31] Dempsey, 825 P.2d at 56-57.
[32] See Id. at 51.
[33] See generally § 24-34-401, et seq., C.R.S., and federal civil rights laws.